COMMONWEALTH OF MASSACHUSETTS
UNITED STATES DISTRICT COURT


KAMELA CHRISTARA
202 Goat Hill Rd.
Saugerties, New York 12477


    VS.

AMERIGAS PROPANE, INC. and
AMERIGAS, INC. AND
AMERIGAS PARTNERS, LP
51   ELECTRIC STREET
ATHOL, MASSACHUSETTS                :

    AND

THE SIRIUS COMMUNITY
72  Baker Road
Shutesbury Massachusetts

## COMPLAINT

### JURISDICTION OF THE COURT

This is a claim for personal injuries due to chronic carbon monoxide poisoning of the plaintiff when she was a resident of the Sirius Community at 54 Baker Road in Shutesbury Massachusetts.  Jurisdiction of this court is based upon diversity of citizenship with in excess of $75,000 in controversy pursuant to 28 USC 1332.  Venue is proper in the District Court for the District of Massachusetts where the defendants are found or do significant business and where the incident occurred.

## THE PARTIES

1. The plaintiff Kamela Christara is an individual citizen of the State of New York with a residence at 202 Goat Hill Road, Saugerties, New York.

2. Amerigas Propane Inc., is a corporation organized under the laws of the Commonwealth of Pennsylvania and authorized to do business under the laws of the Commonwealth of Massachusetts with its headquarters located at 460 North Gulph Road, King of Prussia, Pennsylvania with places of business located in various places in Massachusetts including at 51 Electric Street, Athol, Massachusetts.

3. Amerigas Propane Inc. is the general partner of Amerigas Partners, LP and Amerigas Propane LP is a subsidiary of Amerigas Partners LP. All of the above are headquartered In King of Prussia, Pennsylvania and AmeriGas Propane, L.P. markets propane, propane equipment, and related services including in Shutesbury, Massachusetts and to the Sirius Community. It is believed and therefore averred that the Amerigas defendants conduct their retail propane delivery and service business through their general partner Amerigas Propane, Inc. The company trades and holds itself out to the public as "Amerigas".

4. The Sirius Community is a non-profit corporation organized under the laws of the Commonwealth of Massachusetts with its principal place of business located at 72 Baker Road, Shutesbury Massachusetts. As part of its business and holdings, the Sirius Community owns and rents various residential properties located on its campus including one at 54 Baker Road, Shutesbury, Massachusetts.

## STATEMENT OF FACTS

5. Beginning on or about October 1, 2008 the plaintiff lived at 54 Baker Road, Shutesbury Massachusetts, as a tenant of the Sirius Community.

6. Amerigas is the largest supplier of propane in the United States and also provides service of propane appliances. It advertises that it provides the most reliable, safest and responsive propane service in the nation and that the customer gets not just a supplier but an expert and a partner when utilizing Amerigas. Amerigas represents that it employs full time safety management and safety service and leadership for its customers.

7. At least since 1999, Amerigas supplied propane and serviced the furnace and boiler at 54 Baker Road, Shutesbury, Massachusetts. At that time the house was owned by a Winifred Windriver and it was subsequently sold to the Sirius Community which rented it to the plaintiff.

8. Each year since 1999, Amerigas serviced the furnace and boiler at 54 Baker Road and did so as recently as September 23, 2008 with relevance to the facts of this case.

9. The residents of 54 Baker Road consistently complained of the smell of gas coming from the heater such that, among other things, it made it impossible to sit on their patio near the flue vent for the gas. The tenants also complained about excessively high fuel costs for propane.

10. The service person for Amerigas generally serviced and cleaned the furnace and boiler but never found the cause of the problems complained of.

11. As a result of the constant smell of gas during the heating season, the owner of 54 Baker Road installed an extended vent of corrugated duct work that was approximately 25 feet in length to direct the gas fumes away from the house.

12. In 2006 and 2008 the Amerigas technician directed the owners to remove the extended flue vent but again never found the cause of the continuing heavy gas fumes. Instead he recommended that the residents not sit on the patio during the heating season.

13. After moving into the Sirius Community property in early October 2008, the plaintiff Kamela Christara began to experience severe headaches which she described as migraines.

14. Although the plaintiff had historically suffered from migraines on a monthly or bi-monthly basis, the headaches she experienced while living at 54 Baker Road caused her to go to the emergency room more than 10 times in three months with severe headaches.

15. On the morning of January 6, 2009, the plaintiff Kamela Christara was awakened by a strong smell of gas and feeling sick.  She called the fire department.

16. The Shutesbury Fire Department responded and found a strong smell of gas.  They initially briefly checked the stove which had mildly elevated levels of carbon monoxide at about 25 to 35 parts per million.

17. They then measured carbon monoxide levels at and about the furnace where the detector went into alarm mode and indicated levels in excess of 900 ppm.  That level is dangerous to life and health of the residents and represented the highest possible reading of the monitor carried by the fire department.

18. The fire department checked and found that there were no carbon monoxide detectors in the house as required by Massachusetts law.

19. Ms. Christara, given the extremely late hour elected not to go to the hospital that night and in fact did not go for two more days.  At that time, her carboxyhemoglobin was measured at 1.6 which was slightly elevated and .6 points higher than an earlier reading in October which was at 1 and within the normal range.  The normal range for carboxyhemoglobin is .5 to 1.5.

20. The half life of carboxyhemoglobin is four hours and thus was virtually certainly considerably higher on the morning of January 6.

21. The Fire Chief declared that the house was uninhabitable until the source of the carbon monoxide was diagnosed and repaired.

22. After arriving on January, 6, 2009 the fire department had disconnected the flexible metal duct that had been installed by the Sirius Community to the end of the flue vent. The elevated readings from the furnace were found after disconnecting the flexible duct.

23. The Sirius Community retained Deerfield Valley Heating and Cooling, Inc. to repair the furnace. The initial instruction was to clean the heat exchanger and replace the vent piping within the basement which was rusted and leaking high levels of carbon monoxide. This was done but the technician still found levels of 7000 parts per million carbon monoxide at the exhaust from the furnace.

24. At this point the technician discovered that the natural gas furnace had never been converted to burn propane. He obtained the appropriate parts and did the conversion.

25. The failure to convert a natural gas furnace to a propane furnace if it is to burn propane, as this one did, creates a significant hazard of carbon monoxide production.

26. Propane produces approximately 2.5 times the BTUs per cubic feet as natural gas and requires commensurately more combustion air then does natural gas. Natural gas burners must be converted in order to burn propane by reducing the flow of gas and adjusting pressure levels in order to prevent the overly rich burning of propane and the incomplete combustion of the gas which causes the production of carbon monoxide.

27. The plaintiff was exposed to carbon monoxide throughout the time of her approximately three month residency at the Sirius Community house resulting in severe symptoms

which were not diagnosed as being caused by carbon monoxide until the discovery of high levels of carbon monoxide in the house on January 6. 2009.

28. As a direct and proximate result of the exposure to carbon monoxide the plaintiff, Kamela Christara, suffered severe headaches, severe fatigue and cognitive deficits as demonstrated on neuropsychological testing including losses in I.Q, processing speed, motor deficits, executive function, memory, and other deficits. She had further aggravation of various pre-existing conditions from exposure to sub-lethal but dangerous levels of carbon monoxide over approximately three months.

## COUNT ONE: NEGLIGENCE
## VS. AMERIGAS DEFENDANTS

29. All of the allegations in the foregoing paragraphs are incorporated herein as though set forth in full.

30. The Amerigas defendants or any specific corporate or limited liability entity operating under the Amerigas name, hereinafter referred to as Amerigas, held themselves out as experts in propane and propane safety and not only had the contract for delivery of propane to the house at 54 Baker Road, but also serviced the furnace, and received complaints about the strong smell of gas emanating from the furnace for nearly ten years as well as excessively high fuel bills.

31. As such, Amerigas had a duty of care to the residents of homes to which it was supplying propane and performing furnace service to act with a high degree of care for the safety of those residents, recognizing its significant claimed expertise in the field of propane safety and the multiple serious health hazards, including carbon monoxide poisoning, presented by the use of propane.

32. Amerigas knew or should have known that when a natural gas burner is converted to propane use a conversion kit must be installed de-rating the amount of gas input and adjusting pressure levels.

33. Amerigas knew or should have known that failure to install a propane conversion kit on a natural gas furnace would cause a rich burn of gas and incomplete combustion of the gas. Incomplete combustion of fossil fuels including propane is the cause of carbon monoxide production.

34. Amerigas knew or should have known that an appropriately converted furnace carries an external label verifying the conversion which this furnace did not.

35. Amerigas knew or should have known that the heavy gas smell coming from the furnace was likely to be caused by excess supply of propane to the burner which is exactly what occurs when a natural gas burner is not appropriately converted to burn propane. Amerigas also knew or should have known that excessively high usage of propane in a furnace could likely be caused by the failure to convert the furnace from natural gas settings.

36. Amerigas knew or should have known that the incomplete combustion of propane within a house can cause serious physical harm including damage to the brain and cardiovascular system.

37. Amerigas breached its duty of care and was negligent and careless in servicing the residence at 54 Baker Road, Shutesbury Massachusetts in the following respects:

    a. It failed to verify that the furnace had been converted from natural gas to propane;

    b. It failed to investigate and determine the cause of the heavy smell of propane and the excessive use of the gas at the residence despite repeated complaints;

    c. It continued to supply propane without verifying that the furnace had been properly converted despite repeated complaints that would be consistent with burning of propane in a natural gas furnace;

    d. It failed to inspect the flue vents internal to the building and determine that they were rusted , spilling flue gasses including carbon monoxide and were inappropriate for a high efficiency furnace;

    e. It failed to require its agents, workmen and servants engaged in servicing of furnaces to test for carbon monoxide production and spillage into the residence when the furnace was inspected;

    f. It failed to verify that carbon monoxide detectors were present in the home consistent with Massachusetts law which they were not;

    g. It failed to verify that there was adequate combustion air being supplied to the furnace for the burning of propane;

    h. It failed to convert the natural gas furnace to propane by installing a conversion kit, derating the gas supply and appropriately adjusting the pressure;

    i. It failed to conform to Massachusetts Codes and the National Fuel Gas Code.

38. As a direct and proximate result of the negligence of the defendant Amerigas, carbon monoxide was regularly produced during the heating season in the residence at 54 Baker Road.

39. As a direct and proximate result of the production of carbon monoxide into the residence at 54 Baker Road during the time of her residence there from on or about October 1, 2008 until the discovery of the carbon monoxide by the fire department on January 6, 2009, the plaintiff Kamela Christara was exposed to sub-lethal levels of carbon monoxide resulting in severe headaches, fatigue and multiple cognitive deficits including reduction in I.Q, , short- term memory loss, loss of mental processing speed, loss of the capacity for flexible thinking and problem solving and other deficits as identified on neuropsychological testing all of which are consistent with a chronic exposure to sub-lethal levels of carbon monoxide.

40. As a direct and proximate result of the exposure, the plaintiff suffered an aggravation of a pre-existing headache condition resulting in different, more severe and more frequent headaches necessitating in excess of ten emergency room visits for severe headaches during the period of her residence.   She further suffered aggravation of pre-existing health conditions, in particular severe fatigue.

41.  As a direct and proximate result of these conditions and in particular due to the cognitive losses, the plaintiff has been unable to return to her prior employment much to her detriment and loss.

COUNT TWO:  NEGLIGENCE<br>VS. THE SIRIUS COMMUNITY

All of the allegations contained in the foregoing paragraphs are incorporated herein as though set forth in full.

42.  Having engaged in the business of renting residential property to members of the public including the plaintiff, the defendant Sirius had a duty of care to assure that the premises

were safe for human habitation and free of hazards to life and health, such as appliances producing carbon monoxide including the furnace and stove.

43. The Sirius Community was required by Massachusetts law to supply carbon monoxide detectors in all rental properties, which it failed to do.

44. The failure to supply carbon monoxide detectors is likely to have substantially increased the risk of and harm to the plaintiff by failing to have a legally required means of alerting residents to dangerous levels of carbon monoxide which were present in the building.

45. The Sirius Community was negligent in failing to have an alternate contractor come out and inspect the furnace when the Amerigas service people did not find any cause for the abnormal and excessive smells of gas fumes coming from the furnace.

46. The Sirius Community was negligent in permitting corrugated duct work to be attached to the end of the flue vent from the furnace which may have aggravated the conditions described above by facilitating backdrafting into the building.

47. As a direct and proximate result of the negligence of the Sirius Community jointly and severally with that of Amerigas, the plaintiff was caused to suffer the injuries described above.

COUNT THREE: GL c. 93A<br>VS. AMERIGAS DEFENDANTS

The plaintiff sets forth all of the allegations contained in the foregoing paragraphs as though set forth in full.

48. At all times relevant hereto the defendant Amerigas was engaged in trade or commerce.

49. The actions and conduct of the defendant constitute unfair or deceptive acts or practices within the meaning of G.L. c. 93A, sec. 2 and 3 and 940 C.M.R. sec. 3.16(3).

50. The actions of the defendant described herein were performed willingly and knowingly.

51.  As a result of the above described unfair or deceptive acts or practices, plaintiff sustained severe personal injury.

52.  On June 10, 2011, plaintiff, through her attorney, sent the defendant, via certified mail, return receipt requested, postage prepaid, a written demand for relief pursuant to G.L. c. 93A, sec. 9, identifying the claimant and reasonably describing the unfair acts or practices relied upon and the injuries suffered.  A copy of the demand letter is attached hereto as Exhibit "1."

53.  On August 5, 2011, plaintiff, through her counsel, received a letter from Paul Milligan, Esq., attorney for defendant Amerigas , in reply to plaintiff's demand letter of June 10, 2011.  In this reply letter, Amerigas refused to make a reasonable offer of relief to plaintiff, Kamela Christara.  A copy of Mr. Milligan's letter on behalf of Amerigas is attached hereto as Exhibit "2."  The refusal to grant relief was made in bad faith with knowledge or reason to know that the acts of defendant violated G. L. c. 93A, sec. 2.

WHEREFORE the Plaintiff demands that this Honorable Court, enter judgment against the Defendant, Amerigas, trebled together with interest, costs, attorney's fees and for other such relief as this Honorable Court shall deem necessary and appropriate.

## COUNT FOUR: GL 93A
## VS. THE SIRIUS COMMUNITY

The plaintiff sets forth all of the allegations contained in the foregoing paragraphs as though set forth in full.

54.  At all times relevant hereto the defendant The Sirius Community was engaged in trade or commerce.

11

55. The actions and conduct of the defendant constitute unfair or deceptive acts or practices within the meaning of G.L. c. 93A, sec. 2 and 3 and 940 C.M.R. sec. 3.16(3).

56. The actions of the defendant described herein were performed willingly and knowingly.

57. As a result of the above described unfair or deceptive acts or practices, plaintiff sustained severe personal injury.

58. On June 10, 2011, plaintiff, through her attorney, sent the defendant, Sirius, via certified mail, return receipt requested, postage prepaid, a written demand for relief pursuant to G.L. c. 93A, sec. 9, addressed to Bruce Davidson, its chief executive officer, identifying the claimant and reasonably describing the unfair acts or practices relied upon and the injuries suffered. A copy of the demand letter is attached hereto as Exhibit "3."

59. On July 11, 2011, plaintiff, through her counsel, received a letter from Lawrence Farber, Esq., attorney for defendant Sirius, in reply to plaintiff's demand letter of June 10, 2011. In this reply letter, Sirius refused to make a reasonable offer of relief to plaintiff, Kamela Christara. A copy of defendant Sirius's letter is attached hereto as Exhibit "4." The refusal to grant relief was made in bad faith with knowledge or reason to know that the acts of defendant violated G.L. c.93A, sec. 2.

WHEREFORE the Plaintiff demands that this Honorable Court, enter judgment against the Defendant, Sirius, trebled together with interest, costs, attorney's fees and for other such relief as this Honorable Court shall deem necessary and appropriate.

## JURY CLAIM

The Plaintiff, Kamela Christara, claims trial by jury as to all issues.

BY   x Danielle J. Barshak_____
   DANIELLE BARSHAK, ESQUIRE
   STOBIERSKI AND STOBIERSKI
   377 Main Street
   Greenfield, MA  01301
   413-774-2867
   Danielle@stobierski.com


   \_\_\_x Thomas Gowan_____
   THOMAS GOWAN, ESQUIRE
   THE LOCKS LAW FIRM
   The Curtis Center, Suite 720E
   601 Walnut Street
   Philadelphia PA 19106
   215-893-3401
   Tgowen@lockslaw.com


Dated: January 5, 2012